**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**DESMOND W. CALHOUN,**

    **Plaintiff,**

    v.                                                Civil Action 2:18-cv-426
                                                      Magistrate Judge Kimberly A. Jolson

**FRANKLIN CO. SHERIFF
DALLAS BALDWIN, et al.,**

    **Defendants.**

**OPINION AND ORDER**

This matter, in which the parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c) (Doc. 10), is before the Court on Defendants' Motions for Summary Judgment (Docs. 36, 38); Defendants' Motions to Strike (Docs. 49, 52); and Plaintiff's Motion for Leave to File Supplemental Medical Records (Doc. 61). For the reasons that follow, Defendants' Motions for Summary Judgment (Docs. 36, 38) and Plaintiff's Motion for Leave to File (Doc. 61) are **GRANTED**. Defendants' Motions to Strike (Docs. 49, 52) are **DENIED as moot**.

**I. BACKGROUND**

This is a § 1983 civil rights action for alleged medical deliberate indifference. Plaintiff, who is HIV positive and has a lung condition called histoplasmosis, was arrested on Friday, April 29, 2016. (*See generally* Doc. 1). Subsequent to his arrest, he was detained for eighteen days at Franklin County Correctional Facility II ("FCCC"). (*Id.*). As part of FCCC's intake process, the facility's staff assessed Plaintiff's general health and measured his vitals. (Doc. 43-2). Plaintiff completed a screening form on which he noted his dairy allergy and HIV positive status. (*Id.*). He also noted that he had been taking five prescribed mediations but could not remember their names. (*Id.*). Although not included on the intake form, Plaintiff testified that he notified medical staff of

his lung condition during this initial process. (Doc. 37-1, 51:10; Doc. 43-2). That same day, FCCC staff faxed Plaintiff's signed medical authorization to Plaintiff's healthcare providers. (Doc. 36-2 at 3). Four days later, on May 3, FCCC staff received a list of Plaintiff's current prescriptions. (Doc. 36-3). Five days after that, Defendant Dr. Mohamed H. Abib ordered Plaintiff's medications. (Doc. 36-4).

While Plaintiff waited for his medications, and after he had been in custody for just over one week, he filed a health services request, stating that he felt "weak and sick" and needed his medicine. (Doc. 36-5). He was seen for a physical exam the next day. (Doc. 43-5). Treatment records show that Plaintiff reported worsening symptoms, including sweating, fatigue, and lack of appetite. (*Id.*). The records also note stable vital signs and no visible distress. (*Id.*). The next morning, on May 10, Defendant Samantha Blackburn, a licensed practical nurse ("LPN"), wrote to Plaintiff that some of his medications had arrived at the jail that morning and the others were en route. (Doc. 36-5; Doc. 48, ¶¶ 9–10). Plaintiff underwent blood testing later that day. (Doc. 48-2). According to Defendants' expert Dr. Nathaniel R. Evans, who reviewed those bloodwork results, Plaintiff's "hematocrit (blood count) was normal at 40.6 and his Absolute CD4 Helper cell count (an indication of the condition of AIDS) was normal." (Doc. 36-1 at 4).

The following day, on May 11, Defendant Blackburn ordered an extra blanket for Plaintiff. (Doc. 42-12 at 3). Then, on May 12, Plaintiff refused a physical exam. (*See* Doc. 48-3 ("Refusal of Treatment" form signed by Plaintiff)). It is not clear from the record which day Plaintiff began receiving his medications, but the parties agree it was roughly two weeks after his arrest, on or about May 14 or 15. (*See* Docs. 36 at 3; Doc. 43 at 7). Plaintiff was released from custody soon thereafter, on May 17. (Doc. 37-1, 53:4–15).

Two days after his release, Plaintiff saw his treating nurse practitioner, Diane Orlov. (Doc. 43-1). At the appointment, Plaintiff "appeared nervous," explaining that he had been without his medications in jail, and "want[ed] his numbers checked." (*Id.* at 12). He also reported experiencing "night sweats since off meds" but denied fevers or chills and reported "eating fine." (*Id.*). Plaintiff contends that bloodwork results from that appointment reveal that his viral load levels changed from "undetectable" pre-incarceration to "detectable" post-incarceration. (Doc. 43 at 20). It is undisputed that Plaintiff's viral load levels returned to undetectable levels several weeks later. (*See* Doc. 43 at 20; *see also* Doc. 37-1, 66:23–68:13 (acknowledging that his viral loads were undetectable a month after his release and remained undetectable in December 2016, over six months after his release) (citing Docs. 37-3, 37-4)).

Nearly two years after his arrest, on May 1, 2018, Plaintiff brought this action against Defendants Sheriff Dallas Baldwin; Dr. Mohamed H. Abib; LPN Samantha Blackburn; and Sergeant Mandy Rennie. (Doc. 1). Plaintiff alleges that Defendants "intentionally, deliberately, and with malice failed to provide him with adequate medical care by failing to timely provide him with his medically necessary regimen of HIV and histoplasmosis medications and by failing to provide him with food that complied with his dietary restrictions."[1] (*Id.*, ¶ 1).

Defendants have moved for summary judgment. (Docs. 36, 38). They assert that, without expert testimony, Plaintiff cannot establish his treatment in custody resulted in a serious medical injury. (*See generally id.*). Alternatively, they contend that no evidence shows deliberate

---

[1] The Court notes that, in opposing summary judgment, Plaintiff does not address Defendant Blackburn's argument that Plaintiff's dairy allergy is not sufficiently serious for purposes of the Eighth Amendment or that Plaintiff admitted at his deposition that he did not experience symptoms related to his allergy while incarcerated. (*See* Doc. 36 at 13–14). Instead, Plaintiff responds substantively to Defendant Blackburn's arguments concerning only his HIV positive and histoplasmosis diagnoses. (*See generally* Doc. 43 at 14–21). Consequently, the claim is waived. *See, e.g.*, *Porter v. Louisville/Jefferson Cty. Metro Gov't*, No. 3:12-CV-00829-CRS, 2017 WL 3485062, at *3 (W.D. Ky. Aug. 14, 2017) (alterations in original) (quotation marks and citations omitted) ("[A] non-moving party waives an argument by failing to address the argument in [his] response brief.").

3

indifference to any serious medical need. (*See id*.). The matter is ripe for consideration. (*See* Docs. 36, 38, 43, 44, 48, 51).

## II. STANDARD

Two standards matter here. The summary judgment standard governs what Defendants must do to win their dispositive motions. And the Eighth Amendment deliberate indifference standard sets forth what Plaintiff must do to win his case.

### A. Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial "responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (defining "genuine" as more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### B. Eighth Amendment Deliberate Indifference

"Where prison [or jail] officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual

4

punishment in violation of the Eighth Amendment." *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (alteration in original) (quotation marks omitted) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Pretrial detainees, like Plaintiff, "are analogously protected from such mistreatment under the Due Process Clause of the Fourteenth Amendment." *Napier*, 238 F.3d at 742 (quotation marks omitted) (citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)). "The test to determine whether [prison] officials acted with 'deliberate indifference' has an objective and subjective component." *Napier*, 238 F.3d at 742 (citation omitted).

### 1. *Objective Component*

To satisfy the objective component, a plaintiff asserting an unconstitutional delay in medical care, as Plaintiff does here, must meet two basic requirements. First, he must show that he experienced a "serious medical injury." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 898 (6th Cir. 2004). Second, he must show causation—"the delay caused" that serious medical injury. *Id.* (citing *Napier*, 238 F.3d at 742). Importantly, medical proof, usually in the form of expert testimony, is necessary to satisfy the objective component. *See Blackmore*, 390 F.3d at 898 (citing *Napier*, 238 F.3d at 742). Courts rely on this medical proof to supply the "causal link" between the alleged delay and a serious medical injury. *King v. Alexander*, 574 F. App'x 603, 606 (6th Cir. 2014); *see also Blosser v. Gilbert*, 422 F. App'x 453, 460 (6th Cir. 2011) (quoting *Blackmore*, 390 F.3d at 897) (noting that if a plaintiff alleges a delay in treatment but still received some medical care, "[he] must 'place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment'").

### 2. *Subjective Component*

In addition to showing a serious medical injury caused by a delay in treatment, a plaintiff must also "show that prison officials had a sufficiently culpable state of mind." *Napier*, 238 F.3d

5

at 742 (quotation marks and citation omitted). This burden is heavy. A plaintiff must show: "(1) the official being sued subjectively perceived facts from which to infer a substantial risk to the prisoner, (2) the official did in fact draw the inference, and (3) the official then disregarded that risk." *Richko v. Wayne Cty., Mich.*, 819 F.3d 907, 915 (6th Cir. 2016) (quotation marks and citations omitted). While a plaintiff "need not show that [a defendant] acted with the specific intent to harm," *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 540 (6th Cir. 2008), the defendant must have "recklessly disregard[ed] th[e] risk," *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009).

Relevant here, the Sixth Circuit recently casted doubt upon the subjective standard's application to the claims of pretrial detainees. *See, e.g.*, *Martin v. Warren Cty., Ky.*, 799 F. App'x 329, 338 (6th Cir. 2020), *reh'g denied* (Feb. 4, 2020) (*citing Kinglsey v. Hendrickson*, 576 U.S. 389 (2015)) (noting that the Supreme Court, in *Kingsley*, held that a pretrial detainee's Fourteenth Amendment excessive-force claim was governed by an objective standard). While this question remains open, the Sixth Circuit unequivocally requires "more than negligence" to succeed on a medical deliberate indifference claim. *Martin*, 799 F. App'x at 338 (citations omitted); *see also Meadows v. Putnam Cty., Tenn.*, No. 2:19-CV-00006, 2020 WL 1532311, at *5 (M.D. Tenn. Mar. 31, 2020) (noting that "mere negligence is not sufficient to meet the high deliberate indifference standard"). As explained below, this case does not turn on which standard is applied to the subjective prong.

### III. DISCUSSION

Defendants challenge Plaintiff's deliberate indifference claim in two ways. To begin, they argue that Plaintiff cannot prove his case without expert testimony. Because Plaintiff has no expert in his corner, Defendants assert that this case cannot go on. (Doc. 36 at 6–9; Doc. 38 at 6–9). But,

6

even if an expert is not needed, Defendants offer another hurdle Plaintiff cannot clear. They assert that the record shows no evidence that they were deliberately indifferent to Plaintiff's medical needs. (Doc. 36 at 9–13; Doc. 38 at 9–12). Defendants are correct on both fronts.

### A. Objective Component

As explained, to satisfy the objective component of his deliberate indifference claim, Plaintiff must present verifying medical evidence that the delay in receiving his medications caused a serious medical injury. *Blackmore*, 390 F.3d at 898 (noting that cases involving alleged "delayed administration of medication" require verifying medical evidence to show the effect of that delay). But Plaintiff has failed to secure an expert in this case. Nor has he presented verifying medical evidence linking his treatment at FCCC to any serious medical injury. This evidentiary gap is fatal.

#### 1. *Serious Medical Injury*

The sole medical expert in this case, Dr. Nathaniel Evans, reviewed Plaintiff's medical records and opined that Plaintiff's "medical condition did not deteriorate after his April 29, 2016, to May 17, 2016, incarceration." (Doc. 36-1 at 4). Put simply, Dr. Evans' expert opinion is that Plaintiff suffered no medical harm during his custodial time. Defendants have, therefore, met their initial burden under Rule 56 that Plaintiff did not suffer a serious medical injury. *See, e.g.*, *Browner v. Hill*, 142 F.3d 432 (6th Cir. 1998) (holding that defendants met their "initial burden" by submitting affidavits describing plaintiff's treatment and attesting that plaintiff's injury was "well-healed"). Consequently, it is Plaintiff's turn, as the non-moving party, to respond with evidence creating more than "'some metaphysical doubt as to material facts.'" *Varner v. Smith*, No. 13-15070, 2015 WL 1530441, at *9 (E.D. Mich. Mar. 31, 2015) (quoting *Travelers Prop. Cas. Co. v. Hillerich & Bradsby Co.*, 598 F.3d 257, 270 (6th Cir. 2010)).

Plaintiff responds with only two medical records. The first is a blood test result from April 11, 2016, less than a week before his arrest, which Plaintiff seeks to add to the record (*see* Doc. 61), and the second is a blood test result just days after his release, (*see* Doc. 43-1). Plaintiff asks the Court to compare the records, asserting that they establish his viral load levels changed from "undetectable" before incarceration to "detectable" after his release. (Doc. 43 at 20; *see also* Doc. 61). To ensure a complete record in this matter, Plaintiff's request to supplement the record (Doc. 61) to include these treatment records is **GRANTED**.

But the Court cannot view these records in a vacuum. Importantly, Plaintiff admits that his viral load levels returned to undetectable levels several weeks later. (*See* Doc. 43 at 20; *see also* Doc. 37-1, 66:23–68:13 (acknowledging that his viral loads were undetectable a month after his release and remained undetectable in December 2016, over six months after his release) (citing Docs. 37-3, 37-4)). There is nothing in the record to support Plaintiff's claim that a brief, one-time fluctuation in his viral load levels is indicative of a serious medical injury. *See, e.g.*, *Doering v. Hollenbeck*, No. 214CV02031PKHMEF, 2016 WL 5380938, at *11 (W.D. Ark. July 29, 2016), re*port and recommendation adopted sub nom. Doering v. Hollenbeck*, No. 2:14-CV-02031, 2016 WL 5346086 (W.D. Ark. Sept. 23, 2016), *aff'd as modified*, 691 F. App'x 302 (8th Cir. 2017) ("Plaintiff testified at his Summary Judgment hearing that his CD4 count and viral load were returning to pre-SCDC incarceration levels. Thus, Plaintiff's own testimony and medical records . . . contradict any claim of lasting detrimental effects from the two-week delay in receiving his HIV medications.").

### 2. *Causation*

And even assuming his condition deteriorated, Plaintiff has failed to offer any evidence of causation. Notably, the record shows that Plaintiff was not always compliant with his medications

8

and would, on occasion, go weeks at a time without taking them. (*See* Doc. 36-1 at 4). For instance, according to Dr. Evans' report, a few weeks before Plaintiff was arrested, Plaintiff reported missing one week of his medications. (*Id.*). Given this evidence of noncompliance, the Court is left without a "causal link"—one it may not supply itself—between Plaintiff's treatment in custody and any lasting medical harm. *See King*, 574 F. App'x at 606. ("King's failure to provide medical expert testimony to establish a causal link between her injury and the allegedly inadequate treatment thus dooms her deliberate-indifference claim.").

This is why Plaintiff needs an expert in this case. Only a medical expert, not this Court, can confirm whether Plaintiff's overall health declined as a result of a brief, one-time fluctuation in his viral load levels and whether that deterioration was caused by missing his medication for roughly two weeks while in custody. In the same vein, a declaration from Plaintiff's now-husband that "[m]issing medications takes a toll on your whole body, your liver, everything" (Doc. 43-17) (the "Leonard-Calhoun Declaration") is not enough to overcome Defendants' uncontroverted expert evidence that Plaintiff's overall condition did not deteriorate. *See Rumsey v. Martin*, 28 F. App'x 500, 502 (6th Cir. 2002) (emphasis added) (requiring "medical evidence which *clearly* shows that [plaintiff's] condition deteriorated because of a delay"). Because that declaration does not create a factual issue in this case, Defendants' Motions to Strike the Leonard-Calhoun Declaration (Doc. 49 at 3–4, Doc. 52), are **DENIED as moot**.

In sum, the records on which Plaintiff relies create, at best, "'some metaphysical doubt as to material facts'" but fail to create a genuine issue of material fact that he suffered a serious medical injury caused by his missed medications in custody. *Verner*, 2015 WL 1530441, at *9 (quoting *Travelers Prop. Cas. Co.*, 598 F.3d at 270); *see also Rumsey*, 28 F. App'x at 502 (holding that prison's delay in prescribing inhalers for plaintiff did not constitute an Eighth Amendment

9

violation because plaintiff did "not submit[] medical evidence which clearly shows that his condition deteriorated because of a delay"); *Grace v. Hakala*, No. 1:11CV81 LMB, 2014 WL 790786, at *7 (E.D. Mo. Feb. 26, 2014) ("Even if Plaintiff were able to show that his HIV/AIDS progressed, there is no evidence of a causal connection between an alleged progression and any conduct of defendants."); *Poindexter v. Boyd*, No. 5:10-CV-32, 2011 WL 5008351, at *7 (W.D. Ky. Oct. 20, 2011) (holding that plaintiff's "medical evidence in the form of medical records and medical request forms that he was in pain throughout his incarceration" did "not constitute verifying medical evidence that the pain he suffered was caused by inadequate medical treatment").

### 3. *Obviousness Standard*

Seemingly recognizing his uphill battle without an expert, Plaintiff attempts to hang his hat on the exception to the rule. He argues that medical proof is not required because his need for medical attention was obvious. (*See generally* Doc. 43). In support, he relies on the Sixth Circuit's decision in *Blackmore v. Kalamazoo County*, in which the Court did not require medical proof of harm where the plaintiff displayed obvious signs of appendicitis but did not receive medical treatment for two days. 390 F.3d at 899–900. Unfortunately for Plaintiff, *Blackmore*'s obviousness standard has no place here.

The Sixth Circuit has cabined *Blackmore*'s application "primarily [] to claims of denial or delay of *any* medical treatment rather than claims that a plaintiff was denied or delayed in receiving a *specific* type of medical treatment." *Blosser*, 422 F. App'x at 460 (emphases in original). The record establishes that this is not one of those rare cases. To the contrary, it is undisputed that Plaintiff received medical care in custody. FCCC medical staff attempted to retrieve the names of Plaintiff's prescriptions within hours of booking. (Doc. 36-2 at 3). Defendant Abib approved and

10

ordered Plaintiff's medications. (Doc. 36-4). Plaintiff was seen for a physical exam the day after he complained of feeling weak and sick. (Doc. 43-5). Several days later, he underwent blood testing. (Doc. 48-2). A few days later, he refused a physical exam. (Doc. 45-3). Plaintiff began receiving his medications about two days later. (Doc. 37-1, 53:11–15). And then he was released from custody. (*Id.*, 53:11).

Plaintiff wishes he had received different care—specifically, he wanted to receive his medications much sooner. But "the Sixth Circuit has explicitly found *Blackmore* distinguishable in cases where the plaintiff received treatment for a medical condition but complained either that this treatment was inadequate or that there was a delay in providing a specific, preferred type of treatment." *Wright v. Corizon Health, Inc.*, No. 16-12113, 2019 WL 2387189, at *9 (E.D. Mich. June 6, 2019) (collecting cases). And that is what happened here. Accordingly, "the Court cannot accept Plaintiff's appeal to *Blackmore* as obviating the need for medical proof in order to establish the objective component of his claim of deliberate indifference." *Wright*, 2019 WL 2387189, at *9; *see also Martin*, 799 F. App'x at 329 ("[Decedent] required regular doses of medication—insulin and prednisone—and [plaintiff] argues that [decedent] did not receive what he was prescribed as it was supposed to be administered. Thus, her claims are about the adequacy of treatment. She must provide verifying medical evidence that the treatment [decedent] received for his diabetes and Addison's disease caused him serious medical injury."); *Olmstead v. Fentress Cty., Tenn.*, No. 2:16-CV-00046, 2019 WL 1556657, at *7 (M.D. Tenn. Apr. 10, 2019), *aff'd sub nom. Olmstead v. Fentress Cty. Tenn.*, No. 19-5447, 2019 WL 8631807 (6th Cir. Nov. 27, 2019) (emphasis in original) ("[O]n the few occasions when problems were brought to their attention, [prison] personnel provided *some* care and treatment. . . In the end, [plaintiff] offers no way to objectively connect his right center-eye blindness medical claim with his claim of inadequate

11

treatment by [prison] personnel[] [and,] therefore[,] has not provided sufficient evidence for a reasonable jury to conclude that he has satisfied the objective component of his Eighth Amendment claim."); *Wagner*, 2018 WL 4473369, at *3 (internal citation omitted) ("It is undisputed that Plaintiff received medical treatment in this case, in that his [sleep apnea] machine was sent out for repairs and ultimately replaced. . . . In this case, an expert is necessary to link the chain of causation between memory loss and the temporary absence of a machine, or the fact that the [sleep apnea] machine was not cleaned. And Plaintiff has not provided such expert evidence. This is fatal to his claim.").

Because the obviousness standard does not apply, Plaintiff's attempt to rely on a declaration from his "close friend" who visited him in custody and noticed purportedly obvious symptoms does not help him. (*See* Doc. 43 at 16 (citing Doc. 43-13, ¶ 16) (the "Nirschel Declaration")). So the Nirschel Declaration is not necessary for this Court's decision, and Defendants' Motions to Strike it on a number of bases, including hearsay, (Doc. 49 at 4–5, Doc. 52) are, therefore, **DENIED as moot**.

\* \* \*

At base, the objective component requires Plaintiff to create a triable question as to whether he was "incarcerated under conditions posing a substantial risk of serious harm." *Napier*, 238 F.3d at 742 (quotation marks and citations omitted). Even drawing all reasonable inferences in favor of Plaintiff, the Court concludes that no reasonable juror could conclude that Plaintiff experienced such a risk. Defendants are entitled to summary judgment as a result.

### B. Subjective Component

Because Plaintiff has failed to satisfy the objective component, the Court need not address the subjective component. Yet it is worth noting that Plaintiff has not produced evidence that Defendants were deliberately indifferent to his medical needs.

The record shows that Plaintiff received medical care during his eighteen days in custody. FCCC staff began by attempting to retrieve the names of Plaintiff's prescriptions within hours of booking when Plaintiff himself did not know his medication regimen. (Doc. 36-2 at 3). Albeit with some delay, Defendant Abib approved and ordered Plaintiff's medications after receiving Plaintiff's medical records. (Doc. 36-4). Roughly halfway through his stay, when Plaintiff complained of feeling weak and sick, Defendants took action. The very next day, he was seen for a physical exam. (Doc. 43-5). Plaintiff's vitals were normal, and FCCC medical staff tested Plaintiff's blood. (Doc. 48-2). For her part, Defendant Blackburn responded to Plaintiff's grievances by ordering him an extra blanket (Doc. 42-12 at 3), and communicating with the pharmacy regarding Plaintiff's medications, (Doc. 36-5; Doc. 48-1, ¶¶ 9–10). Perhaps most important, it is undisputed that Plaintiff began receiving his medications before he was released. (Doc. 37-1, 53:11–15).

Plaintiff insists that Defendants should have done more. (*See, e.g.*, Doc. 43 (asserting that Defendant Blackburn should have administered Plaintiff's medications faster); (Doc. 44 at 19–20 (asserting that Defendant Abib should have followed up regarding Plaintiff's medications); *id.* at 20 (asserting that Defendant Rennie should have done more after allegedly informing Plaintiff's friend on the phone that she would "look into" Plaintiff's medications)). And maybe more could have been done to secure Plaintiff's medications earlier. Yet "'a desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim.'" *Greene v. Crawford*

13

*Cty.*, No. 18-11008, 2020 WL 3469172, at *13 (E.D. Mich. June 25, 2020) (quoting *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014)); *see also Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (noting that, while plaintiff "certainly would have desired more aggressive treatment, he was at no point denied treatment").

At most, a reasonable juror could conclude that FCCC staff acted negligently in failing to earlier obtain and administer Plaintiff's medications. That is not enough—even under a more lenient standard potentially applicable to the claims of pretrial detainees. *See Martin*, 799 F. App'x at 338 (noting that pretrial detainees must show "more than negligence" to succeed on a deliberate indifference claim). Defendants are entitled to summary judgment for this reason, too. *See, e.g.*, *Carter v. Mich. Dep't of Corr.*, No. 12-CV-12621, 2013 WL 5291567, at *3 (E.D. Mich. Sept. 19, 2013), *aff'd* (Sept. 26, 2014) ("Although there was a delay in the renewal of [plaintiff's] [] prescription for at least the period between his request on July 1, 2011 and its approval on August 12, 2011, there is no evidence that defendants acted with deliberate indifference in not acting sooner upon the request" and that, "in fact, the record demonstrates that the delay may have been inadvertent[.]"); *Hendricks v. Desmarais*, No. 2:11-CV-937, 2013 WL 4536962, at *6 (S.D. Ohio Aug. 27, 2013) (collecting cases where plaintiff failed to show deliberate indifference based on a delay in ordering or administering medications and concluding that plaintiff had shown no more than negligence where "[p]rison officials sent numerous requests seeking approval of [p]laintiff's medication, but apparently failed to timely follow-up those requests," and concluding that, "[a]t most, [] these failures constitute medical negligence rooted in a lack of follow-through[.]"); *Modd v. Cty. of Ottawa*, No. 1:10-CV-337, 2012 WL 5398797, at *14 (W.D. Mich. Aug. 24, 2012), *report and recommendation adopted*, No. 1:10-CV-337, 2012 WL 5398793 (W.D. Mich. Nov. 2, 2012) (emphases in original) ("Such arguments, unsupported by proof that [defendant nurse] *both*

knew that the verified prescription had not yet been filled *and* failed to take any action are unavailing" and "[t]he best that plaintiff can muster is that [defendant nurse] (or some other, unnamed medical staffer) should have known and should have done something about it"); *Salem v. Yukins*, No. 04-72250, 2008 WL 4298390, at *16 (E.D. Mich. Sept. 18, 2008) ("Plaintiff does not submit any evidence that [defendant] disregarded a risk of harm to plaintiff and instead appears to merely argue that, because [defendant] knew of the delay[,] her inaction constituted deliberate indifference. However, deliberate indifference is characterized by obduracy and wantonness, not inadvertence or good faith error. Given the evidence that [defendant] ordered plaintiff's medications, did not know why there was a delay and performed blood work, . . . there is no genuine issue of material fact as to the subjective component of plaintiff's claim regarding her medications.").

All told, Plaintiff has failed to satisfy either the objective or subjective components essential to succeeding on an Eighth Amendment medical deliberate indifference claim.

### IV.   CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment (Docs. 36, 38) and Plaintiff's Motion for Leave to File (Doc. 61) are **GRANTED**. Defendants' Motions to Strike (Docs. 49, 52) are **DENIED as moot**.

IT IS SO ORDERED.


Date: July 16, 2020                                          /s/ Kimberly A. Jolson
                                                             KIMBERLY A. JOLSON
                                                             UNITED STATES MAGISTRATE JUDGE